# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In Re: ) | **JUDGE RICHARD L. SPEER** |
| Stephen/Patricia Bissonnette ) | Case No. 07-3273 |
| Debtor(s) ) | (Related Case: 07-33085) |
| Rushelle Ewing, et al. ) | |
| Plaintiff(s) ) | |
| v. ) | |
| Stephen Bissonnette, et al. ) | |
| Defendant(s) ) | |

### DECISION AND ORDER

This cause comes before the Court after a Trial on the Plaintiffs' Complaint to Determine Dischargeability of Debt. At the Trial, the Parties were given the opportunity to present evidence and make arguments that they wished the Court to consider in reaching its decision. At the conclusion of the Trial, this Court deferred ruling on the matter so as to afford the opportunity to thoroughly review the evidence presented, the arguments of counsel, as well as the entire record in this case. Based upon that review, and for the following reasons, this Court finds the Plaintiffs' Complaint to have merit and thus, to the extent provided herein, the relief sought in the Plaintiffs' Complaint will be entered. With respect to this ruling, the succeeding discussion shall constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

**Rushelle Ewing, et al. v. Stephen Bissonette, et al.**
**Case No. 07-3273**

## FACTS

On September 12, 2001, the Debtor/Defendant, Stephen P. Bissonnette (hereinafter "Mr. Bissonnette") and his wife, Patricia, acquired title to real property located at 624 Knower St. in Toledo, Ohio for the sum of $5,000.00. On or about January 7, 2003, Mr. Bissonnette, in an effort to consolidate a number of debts and obligations that he had incurred through the purchase and repair of Knower St. and other real properties, signed a Personal Credit Line Agreement with Huntington Bank in the amount of $19,600.00, secured by a mortgage on the Knower St. property. Mr. Bissonnette's wife, Patricia, was a cosignatory on the Personal Credit Line Agreement and mortgage.

On February 15, 2003, the Plaintiff, Rushelle Ewing (hereinafter "Mrs. Ewing"), consummated a "Lease with Purchase Option" with Mr. Bissonnette wherein Mrs. Ewing agreed to pay rent of $500.00 per month, beginning February 15, 2003, for the lease of the Knower St. property. The Lease also contained an option to purchase the property for the sum of $19,000.00. The Lease included the following handwritten statement:

> Seller has loan on building at 624 Knower [St.] will be payed (sic) off buy (sic) February 15, 2006 or Lessee will receive full refund of monies payed (sic).

Two years later, on February 23, 2005, having been paid the $19,000.00 in consideration per the Lease agreement, Mr. Bissonnette signed a Promissory Note and delivered it to Mrs. Ewing's husband, the Co-Plaintiff Rashad Ewing (hereinafter "Mr. Ewing"). The Promissory Note contained the following provisions:

> (1) A sentence written by Mr. Bissonnette stating, "This note is to state that Rashad Ewing has paid in full the sum of $19,000.00 for 624 Knower St. Deed to property is to be delivered to him on or before December 30, 2005."

Page 2

    (2) A line beneath the sentence stating "with no liens."

On or about August 13, 2006, a fire broke out at the Knower St. property which caused assessed damages in the amount of $5,391.55. With perhaps the exception of $1,000.00, Mr. Bissonnette neither delivered the proceeds from the insurance policy nor paid to have the property cleaned and/or repaired, despite having provided the following handwritten statement:

1) Rashad Ewing is to receive ins. check for repairs to be done at 624 Knower

Furthermore, Mr. Bissonnette neither delivered the deed to the Knower St. property nor, in the alternative, paid them the amount of $19,000.00, as provided for in the Lease and Promissory Note.

Mr. and Mrs. Ewing repeatedly attempted to secure the deed from Mr. Bissonnette and/or his performance under the Lease and Promissory Note through telephone calls and other forms of communication, but without success. Finally, on February 4, 2007, Mr. and Mrs. Ewing filed a complaint in state court wherein they sought damages against Mr. Bissonnette for his failure to perform according to their agreements and to deliver the proceeds from the insurance policy.

On July 18, 2007, before a ruling on the merits in the state-court action, Stephen and Patricia Bissonnette filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. In response, the Plaintiffs filed the instant Complaint to determine the dischargeability of debt.[1] In their Complaint, the Plaintiffs sought compensatory damages in the amount of $19,000.00, for Mr. Bissonnette's failure to perform his contractual obligations, plus an additional $5,391.55 in

---

[1] The Complaint was filed against both Stephen and Patricia Bissonnette. Pursuant to Bankruptcy Rule 7052(c), Patricia Bissonnette was dismissed as a party to the proceedings. (Doc. No. 31).

Page 3

Rushelle Ewing, et al. v. Stephen Bissonette, et al.
Case No. 07-3273

compensatory damages for Mr. Bissonnette's failure to deliver the insurance proceeds. In addition, the Plaintiffs asked the Court to award them punitive damages and attorney's fees.

## DISCUSSION

Before this Court is the Plaintiffs' Complaint to Determine Dischargeability of Debt.[2] Proceedings brought to determine the dischargeability of particular debts are deemed core proceedings pursuant to 28 U.S.C. § 157(b)(2)(I). Accordingly, this Court has the jurisdictional authority to enter final orders and judgments in this matter. *Id.*; 28 U.S.C. § 1334.

In their Complaint to determine dischargeability of debt, the Plaintiffs state, in the main, that: "the Defendants fraudulently obtained money from the Plaintiffs in violation of 11 U.S.C. § 523(a)(2); . . . the Defendants acted as a fiduciary and fraudulently embezzled insurance money in violation of § 523(a)(4)[; and] the Defendants caused willful and malicious injury to the Plaintiffs and to the property of the Plaintiffs." (Doc. No. 1). Based upon this language, the Plaintiffs' Complaint appears to assert causes of action not only under the provisions specified, § 523(a)(2) and (a)(4), but also under § 523(a)(6) – which excepts from discharge debts resulting from a willful and malicious injury. However, as now explained, the Plaintiffs' Complaint can stand on § 523(a)(2)(A) and thus this Court's analysis will be confined to that section alone.

---

[2] Originally, certain matters in this adversary proceeding were brought before this Court by way of the Parties on Motions for Partial Summary Judgment. However, pursuant to discussions held at a pre-trial conference, it was decided to go forth with trial. Thus, while this Court has considered the arguments made by the Parties in their respective motions, the motions have been rendered moot pursuant to this decision.

Page 4

Rushelle Ewing, et al. v. Stephen Bissonette, et al.
Case No. 07-3273

Section 523(a)(2)(A) provides:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt–

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

So as to further the fresh-start policy of the Bankruptcy Code, exceptions to dischargeability under § 523(a) are narrowly construed in favor of the debtor. *Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298, 306 (6th Cir. B.A.P. 2004), *citing Meyers v. I.R.S. (In re Meyers)*, 196 F.3d 622, 624 (6th Cir. 1999). In conformance therewith, the plaintiff bears the ultimate burden of persuasion to establish, by at least a preponderance of the evidence, the applicability of § 523(a)(2)(A). *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). This section of the Bankruptcy Code helps implement the long-standing policy that only those debts which are honestly incurred are entitled to the benefits of a bankruptcy discharge. *Weeber v. Boyd (In Re Boyd)*, 322 B.R. 318, 324 (Bankr. N.D.Ohio 2004), *citing FTC v. Austin (In re Austin)*, 138 B.R. 898, 903 (Bankr. N.D.Ill. 1992).

In order to sustain a cause of action under § 523(a)(2)(A), the Sixth Circuit Court of Appeals, in *Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 280-81 (6th Cir. 1998), held that a creditor bears the burden of establishing the existence of each of the following elements:

(1) the debtor made false representations;

(2) the debtor knew such representations to be false at the time they were made;

Page 5

> (3) the representations were made with the intent to deceive the creditor;
>
> (4) the creditor relied on the representations; and
>
> (5) the creditor's loss was the proximate result of the misrepresentation having been made.

On the applicability of these elements, the existence of the first, fourth, and fifth elements are not in dispute. The facts clearly show that Mr. Bissonnette failed to abide by his promises to transfer a deed to the Knower St. property or, in the alternative, to repay the $19,000.00 as provided for in the Lease and Promissory Note and, that in reliance thereon, the Plaintiffs suffered a loss. Furthermore, as it regards the insurance proceeds, Mr. Bissonnette does not contest that he failed to turn over the insurance proceeds to the Plaintiffs after the fire. Finally, it can be presumed that the Plaintiffs subjectively relied on Mr. Bissonnette's representations, with the undisputed facts showing that the Plaintiffs were in frequent contact with Mr. Bissonnette regarding the issue of the deed transfer and/or repayment of the $19,000.00 as provided for in the Lease and Promissory Note. *See Field v. Mans*, 516 U.S. 59, 70-71, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) (adopting the lower subjective standard of justifiable reliance as opposed to the objective standard of reasonable reliance). Thus, only the second and third elements are in material dispute: whether Mr. Bissonnette, having present knowledge as to the falsity of the representation, acted with the intent to deceive the Plaintiffs?

It is well-established that the failure to fulfill a promise, standing alone, is not a sufficient ground upon which to base a finding of fraudulent intent for purposes of § 523(a)(2)(A). *Mack v. Mills (In re Mills)*, 345 B.R. 598, 604 (Bank.N.D.Ohio 2006), *citing Jacobs v. Ballard (In re Ballard)*, 26 B.R. 981, 985 (B.D.Conn. 1983). A finding of fraudulent intent under § 523(a)(2)(A), instead, requires that a creditor show that the debtor had no intent to honor the obligation at the time the debt was incurred. *Clyde-Findlay Area Cr. Union v. Burwell (In re Burwell)*, 276 B.R. 851, 854

(Bankr. N.D.Ohio 2002). On this matter, the Sixth Circuit Court of Appeals has held that "the proper inquiry to determine a debtor's fraudulent intent is whether the debtor subjectively intended to repay the debt." *In re Rembert*, 141 F.3d at 281. And with the subjective intent of a debtor at issue, this Court previously observed: "of utmost importance in any fraudulent intent analysis is the credibility the Court attaches to the testimony of the debtor and any other witnesses called to testify." *In re Mills*, 345 B.R. at 604.

Moreover, as it is highly unlikely that any debtor will actually admit to acting with the intent to deceive, a court may also consider circumstantial evidence concerning the debtor's state of mind at the time of the alleged deception. *Binger v. Bloomfield (In re Bloomfield)*, 293 B.R. 148, 153 (Bankr. N.D.Ohio 2003). The utilization of circumstantial evidence may include assessing factors such as the debtor's conduct after incurring the obligation, the debtor's financial sophistication, and whether the debtor failed to make attempts to perform their obligation. *Kille v. Rudski (In re Rudski)*, 354 B.R. 121, 126 (Bankr.N.D.Ohio 2006). Regarding the latter, as a general rule, the greater the extent of a debtor's performance, the less likely it will be that they possessed an intent to defraud. *Anastas v. American Savings Bank (In re Anastas)*, 94 F.3d 1280, 1285 (9th Cir. 1996). But ultimately, the Court in *In re Rembert* held that what a court must determine is whether the totality of the circumstances "leads to the conclusion that it is more probable than not that the debtor had the requisite fraudulent intent." 141 F.3d at 282, *citing Chase Manhattan Bank v. Murphy (In re Murphy)*, 190 B.R. 327, 332 (Bankr. N.D.Ill. 1995).

In this matter, when cumulatively viewing the circumstances, a number of problems arise insofar as it concerns Mr. Bissonnette's failure to perform as promised. The first is simply Mr. Bissonnette's evasive conduct. On multiple occasions, the Plaintiffs made inquiries into the delivery of the deed to the Knower St. property and the refund of the $19,000.00 as provided for in the Lease and Promissory Note. According to the Plaintiffs, Mr. Bissonnette was always coming up with a new

Page 7

excuse as to why the deed could not be conveyed today, but would be conveyed soon. To that end, Mrs. Ewing testified that these representations took place for nearly a year.

As further evidence of his evasive conduct, Mr. Ewing testified that Mr. Bissonnette promised on a number of occasions that he would deliver the insurance proceeds for the cleanup and repair of the property after the fire but then continually made excuses as to why he was unable to deliver the proceeds. Finally, according to Mr. Ewing, even before Mr. Bissonnette signed the Promissory Note, he told Mr. Ewing that he needed just another year to pay off the mortgage on the Knower St. property. However, Mr. Bissonnette admitted that he never paid off the mortgage after signing the Note and that the property, while under his ownership, had never actually been free and clear of liens.

As it regards this evidence, while this Court appreciates that matters with real estate conveyances may not always occur immediately, at some point, an endless cycle of excuses eventually breaks down; euphemistically speaking, "soon" must occur at some time. However, well beyond the time that there was a realistic possibility of him being able to perform on his promises, Mr. Bissonnette continued to provide the Plaintiffs with the false assurances of his performance. This is unacceptable. Mr. Bissonnette's subjective knowledge of his inability to perform is further supported by the following evidence.

First, it appears to this Court that Mr. Bissonnette used the $19,000.00 that the Plaintiffs had provided for the Knower St. property, and the $5,391.55 from the insurance proceeds, to fund his other investments. While commingling funds is not necessarily a fraudulent act, Mr. Bissonnette acknowledged that, during the course of his relationship with the Plaintiffs, he was "caught between a rock and a hard place" with regards to his real estate business, thereby revealing that Mr. Bissonnette was subjectively aware of his precarious financial situation at the time he made his assurances to the Plaintiffs. Further supporting this conclusion is Mr. Bissonnette's testimony at Trial

Page 8

whereat he explained that his precarious situation arose as a result of the huge disparity between the income he was generating from his real estate business and the money he was expending to service his secured debt.

Additionally, as it pertains to his subjective intent, the evidence shows that, instead of delivering the insurance proceeds to the Plaintiffs to help with the damage cleanup and repair, Mr. Bissonnette deposited the money into his personal rather than his business account, and then used the funds to pay other expenses. What this Court finds especially problematic in this regard is the fact that Mr. Bissonnette is an experienced businessman, and thus should have known of the importance to keep personal and business finances separate. To that end, Mr. Bissonnette testified that, before entering the real estate business, he managed a hair salon for ten years. Thus, this Court finds it hard to believe that Mr. Bissonnette did not have at least a basic appreciation of business accounting principles.

In an effort to show that he did not intend to defraud the Plaintiffs, Mr. Bissonnette testified at Trial that he delivered a water heater to the Knower St. property and gave the Plaintiffs a $1,000.00 check for basic cleanup and repair after the fire. The Plaintiffs, however, disputed these assertions, and their existence has not been corroborated. However, even accepting such facts as true, they are woefully insufficient to negate those strong inferences of fraudulent intent that, as just discussed, exist in this case.

Consequently, when all the foregoing considerations are weighed, this Court finds that the Plaintiffs have sustained their burden of showing that Mr. Bissonnette, having present knowledge as to the falsity of his representation, acted with the intent to deceive the Plaintiffs. Thus, this Court must hold that Mr. Bissonnette's obligations to the Plaintiffs – $19,000.00 for his failure to perform as promised under their agreements and $5,391.55 for his failure to deliver the insurance proceeds as promised – are nondischargeable pursuant to § 523(a)(2)(A).

Page 9

**Rushelle Ewing, et al. v. Stephen Bissonette, et al.**
**Case No. 07-3273**

In addition to seeking a finding of nondischargeability, the Plaintiffs have also asked that the Court render a monetary judgment in their favor for actual damages, attorney's fees, and punitive damages. This Court has jurisdiction to award a monetary judgment for a debt held to be nondischargeable. *See Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 965 (6th Cir. 1993); *accord N.I.S. Corp. v. Hallahan (In re Hallahan)*, 936 F.2d 1496, 1507-08 (7th Cir. 1991) (recognizing that the bankruptcy court has jurisdiction to enter a money judgment for the amount of the creditor's claim found to be excepted from discharge); *Snyder v. Devitt (In re Devitt)*, 126 B.R. 212, 215 (Bankr. D.Md.1991) ("[I]t is impossible to separate the determination of dischargeability function from the function of fixing the amount of the nondischargeable debt.").

Pursuant to the preceding discussion, it is clear that the Plaintiffs suffered actual damages in the amount of $19,000.00 on account of Mr. Bissonnette's failure to perform as promised under their agreements and $5,391.55 for his failure to deliver the insurance proceeds. Thus, the Plaintiffs are entitled to a judgment in their favor in the amount of $24,391.55. However, as now explained, neither attorney's fees nor punitive damages are warranted in this case.

Awards of attorney fees in bankruptcy cases are governed by the "American Rule." Under the "American Rule," the prevailing litigant is generally not entitled to collect attorney's fees. *See Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co.*, — U.S. —, 127 S.Ct. 1199, 1203-04, 167 L.Ed.2d 178 (2007). This default rule, however, can be overcome by statute, contract, or other specific rule of common law authorizing an award of attorney's fees. *Id.* Directed by the "American Rule," this Court finds no legal or factual grounds, whether under the Bankruptcy Code, a contract between the Parties, or under applicable Ohio state law, to grant attorney's fees to the Plaintiffs in this case.

First, § 523(a)(2)(A) contains no express authority for the Court to make an award of legal fees to the prevailing party, an omission which does not appear to have been accidental. Section

Page 10

Rushelle Ewing, et al. v. Stephen Bissonette, et al.
Case No. 07-3273

523(d) does provide an award of attorney's fees. However, § 523(d) applies only to matters of consumer debt and where judgment is rendered in favor of the defendant, circumstances not applicable here.

Second, having analyzed the Lease and Promissory Note executed by the Parties, as well as all the other evidence, this Court finds nothing which would provide the Plaintiffs with a contractual basis to merit an award of attorney's fees. Third and finally, while Ohio law allows for attorney's fees to be awarded in a claim based upon fraud, it must be coupled with an award for punitive damages. *Galmish v. Cicchini*, 90 Ohio St.3d 22, 35, 734 N.E.2d 782, 795 (2000). But as now explained, an award of punitive damages is not proper in this case, thereby negating any legal basis upon which to make an award of attorney fees.

To establish a claim for punitive damages in a fraud action, the plaintiff "must establish not only the elements of the tort itself but, in addition, must show that either the fraud is aggravated by the existence of malice or ill will, or must demonstrate that the wrongdoing is particularly gross or egregious." *Logsdon v. Graham Ford Co.*, 54 Ohio St.2d 336, 340, 376 N.E.2d 1333 (1978); *see also Combs Trucking, Inc. v. Int'l Harvester Co.*, 12 Ohio St.3d. 241, 466 N.E.2d 883 (1984). In this case, the Plaintiffs have not demonstrated that Mr. Bissonnette's actions were aggravated by the kind of conduct which would necessitate an award of punitive damages.

The evidence produced at Trial, shows that Mr. Bissonnette's business of "flipping" homes was proving to be an unsuccessful venture during the course of his relationship with the Plaintiffs and that, with all of the bills associated with that business bearing down upon him, he was merely attempting to keep his and his family's heads above water. To that end, it appears that Mr. Bissonnette's actions, while sufficient to impose liability under 523(a)(2)(A), were the result of his attempt to bail the water out of a rapidly sinking ship. In sum, though this Court agrees with the Plaintiffs that Mr. Bissonnette's conduct was fraudulent in nature, the Plaintiffs have not shown that

Page 11

**Rushelle Ewing, et al. v. Stephen Bissonette, et al.**
**Case No. 07-3273**

his actions were based upon malice or ill will or were so gross or egregious as to justify an award of punitive damages.

For this finding, it is noted that punitive damages are not designed to compensate the prevailing party, but rather are intended exclusively "to punish[ ] unlawful conduct and deter[ ] its repetition." *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 568, 116 S.Ct. 1589, 1595, 134 L.Ed.2d 809 (1996); *see also Exxon Shipping Co. v. Baker*, — U.S.— , 128 S.Ct. 2605, 2621 (2008) ("[T]he consensus today is that punitives are aimed not at compensation but principally at retribution and deterring harmful conduct."); *Moskovitz v. Mount Sinai Medical Center*, 69 Ohio.St.3d 638, 651, 635 N.E.2d 331, 343 (1994) ("The purpose of punitive damages is not to compensate a plaintiff, but to punish and deter certain conduct"). It is also the movant's burden to establish their entitlement to punitive damages. After examining all the evidence, this Court cannot find that the Plaintiffs have met their burden of showing that Mr. Bissonnette is likely to repeat his fraudulent actions, thus, no purpose would be served by awarding the Plaintiffs punitive damages in this case.

In conclusion, when all the foregoing considerations are weighed, this Court finds that the claims held by the Plaintiffs against the Debtor are nondischargeable debts pursuant to § 523(a)(2)(A). In reaching this conclusion, this Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Page 12

**Rushelle Ewing, et al. v. Stephen Bissonette, et al.**
**Case No. 07-3273**

Accordingly, it is

**ORDERED** that the claims held by the Plaintiffs, Rushelle and Rashad Ewing, against the Defendant, Stephen Bissonnette, be, and are hereby, determined to be NONDISCHARGEABLE DEBTS.

**IT IS FURTHER ORDERED** that the Plaintiffs, Rushelle and Rashad Ewing, are hereby awarded judgment against the Defendant, Stephen Bissonnette, in the amount of $24,391.55.

**IT IS FURTHER ORDERED** that, pursuant to Bankruptcy Rule 9021, the Clerk, United States Bankruptcy Court, shall issue a separate judgment entry in accordance with the above order.

Dated: August 12, 2008

-----------------------------------
Richard L. Speer
United States
Bankruptcy Judge

# CERTIFICATE OF SERVICE

Copies were mailed this 11th day of August 2008 to:

Patricia A. Bissonnette
2518 Sherwood Avenue
Toledo, OH 43614

Stephen P. Bissonnette
2518 Sherwood Avenue
Toledo, OH 43614

Louis J Yoppolo
1200 Edison Plaza
300 Madison Avenue
Toledo, OH 43604

Rushelle Ewing
2823 Collingwood Blvd.
Toledo, OH 43610

Joanna E. Baron
1900 Monroe St, #113
Toledo, OH 43604

/s/Jennifer S Huff
Deputy Clerk, U.S. Bankruptcy Court